IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA,
SOUTHERN DIVISION

| | | |
|---|---|---|
| REGIS INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | 1:06-cv-125-MEF |
| P&C GROCERS, INC., a corporation; | ) | |
| CHARLES PARKER, an agent of same; and | ) | |
| CECELIA GIBBS, an individual; | ) | |
| | ) | |
| Defendants. | ) | |

**BRIEF IN SUPPORT OF PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT**

Plaintiff Regis Insurance Company ("Regis") files this Brief in support of its

Motion for Summary, stating as follows:

## I. INTRODUCTION

This action seeks a declaration that Regis owes neither a defense nor an

indemnification to P&C Grocers, Inc. ("P&C") or Charles Parker ("Parker") for

claims asserted against them in a suit filed by Cecelia Gibbs ("Gibbs") alleging that

she was the victim of sexual harassment and religious discrimination while in P&C's

employ. Quite simply, the conduct for which Gibbs seeks to hold P&C and Parker

liable is intentional and cannot constitute an "occurrence" under the governing

insurance policy. Further, numerous coverage exclusions preclude any determination

that coverage should attach.  Regis, therefore, owes no coverage to P&C or Parker.

## II.  NARRATIVE SUMMARY OF UNDISPUTED FACTS

**A.     The Parties**

1.      Gibbs is the plaintiff in an action brought against P&C and Parker that is pending before the United States District Court for the Middle District of Alabama, Southern Division.  See Exhibit 1 to MSJ, ¶¶ 6-8.  Said action is styled Cecelia Gibbs v. P&C Grocers, et al., 05-CV-00912-MHT-SRW (the "Gibbs suit").  Id., p. 1.

2.      For the  period at issue in this action, Regis was P&C's insurer under a policy of multi-peril general liability insurance.  See Exhibit 2 to MSJ

3.      Parker is the president of P&C.  See Exhibit 1 to MSJ, ¶ 8.

**B.     Defendant Gibbs's Suit Against Defendants P&C and Parker**

4.      The Gibbs suit asserts legal and equitable claims against P&C and Parker and seeks both compensatory and punitive damages.  Id., ¶¶ 15-25.

5.      Gibbs alleges that P&C and Parker are liable for (a) "sexual harassment," "discrimination," and "retaliation"; (b) "discriminat[ion] ... on the basis of ... religion"; and (c) "intentional infliction of emotional harm" (the tort of outrage).  Id., ¶¶ 16, 20, and 24.

6.      Gibbs alleges that Parker (and vicariously P&C, presumably)

(a)     "subjected the plaintiff to unwanted, inappropriate and harassing

2

remarks and touching";

    (b)    "rubbed the Plaintiff's shoulders in a sexually suggestive way"; and

    (c)    "continually instructed the Plaintiff to 'get right with God.'"

Id., ¶¶ 9 and 11.

7.    Gibbs alleges that she asked Parker to cease the alleged improper sexual conduct, but "no action was taken to cease or prevent the sexual harassment." Id., ¶ 10.

8.    Gibbs alleges that, to no avail, she asked Parker to "refrain from discussing religion in her presence." Id., ¶ 11.

9.    Gibbs further alleges that she was discharged "[i]n retaliation for her complaints regarding the sexual harassment and religious comments." Id., ¶ 13.

10.    Gibbs specifically alleges that all acts of harassment and discrimination were committed "intentionally and maliciously." Id., ¶¶ 16 and 20.

11.    The Gibbs suit makes clear that all claims arise from conduct occurring "at Defendant P&C Grocers, Inc. Eunola, Alabama store. Id., ¶¶ 16, 20, and 25.

12.    Regis is providing a defense to P&C and Parker under a reservation of rights.

C.    **The Governing Policy Provisions**

13.    Regis issued a policy of multi-peril general liability insurance, No. RM 126366 (the "Policy"), effective March 22, 2004, through March 22, 2005, to P&C. See Exhibit 2 to MSJ.

14.    The Policy provides, among other things, as follows:

> The Company [Regis] will pay on behalf of the **insured** [P&C and, perhaps, Parker] all sums which the **insured** shall become legally obligated to pay as damages because of
> A.    **bodily injury** or
> B.    **property damage**
> to which this insurance applies, caused by an **occurrence**, and the company shall have the right and duty to defend any suit against the **insured** seeking damages on account of such **bodily injury** or **property damage** ...

Id. (P&C 000015)[1](emphasis in original).

15.    The Policy defines "occurrence" as follows:

> **"occurrence"** means an accident including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured.

Id. (P&C 000058)(emphasis in original).

16.    The Policy includes the following "Sexual Molestation and/or Sexual

---

[1] The parenthetical citation refers to the particular page of Exhibit 2 on which the cited information appears.

Harassment Exclusion":

> NOTWITHSTANDING ANYTHING TO THE CONTRARY CONTAINED IN THIS POLICY, NO COVERAGE IS AFFORDED UNDER THIS POLICY FOR EITHER DEFENSE OR INDEMNIFICATION, FOR ANY CLAIM FOR DAMAGES FOR "BODILY INJURY" OR "PERSONAL INJURY" ARISING OUT OF THE ALLEGED OR ACTUAL SEXUAL MOLESTATION AND/OR SEXUAL HARASSMENT OF ANY PERSON. FOR PURPOSES OF THIS EXCLUSION, THE TERMS "SEXUAL MOLESTATION" AND "SEXUAL HARASSMENT" INCLUDE BUT ARE NOT LIMITED TO PHYSICAL ACTS OF A SEXUAL NATURE, ORAL OR WRITTEN COMMUNICATION OF A SEXUAL NATURE AND ORAL OR WRITTEN COMMUNICATION OF A DISPARAGING OR INSULTING SEXUAL NATURE.

> THIS EXCLUSION ALSO APPLIES TO CLAIMS FOR DAMAGES THAT RELATE TO, OR ARISE OUT OF, OR ARE BASED ON SUCH SEXUAL MOLESTATION AND/OR SEXUAL ABUSE, SUCH AS, BUT NOT LIMITED TO (1) TERMINATION OF EMPLOYMENT OR RELATIONSHIP AS THE RESULT OF THE SEXUAL MOLESTATION AND/OR SEXUAL HARASSMENT OR RESISTANCE THERETO, (2) THE FAILURE TO INVESTIGATE, SUPERVISE, STOP, RESTRAIN, DISCIPLINE, ADMONISH, OR TERMINATE ANYONE ALLEGED TO BE ENGAGED IN SUCH SEXUAL HARASSMENT AND/OR SEXUAL MOLESTATION OR (3) THE FAILURE TO PROMULGATE AND/OR ENFORCE POLICIES AND RULES RELATIVE TO SEXUAL HARASSMENT AND/OR SEXUAL MOLESTATION.

Id. (P&C 000041)(capitalization in original).

5

17.    The Policy includes the following "Assault and Battery Exclusion and Coverage Deletion Endorsement":

I.    In consideration of the premium charged for this insurance, it is understood and agreed that the policy to which this endorsement is attached is amended and modified as follows:

Actions and proceedings to recover damages for "bodily injury" or "property damage" or "personal injury" arising, in whole or in part, from the following are excluded from coverage and the Company is under no duty to investigate, defend or to indemnify an insured in any action or proceeding alleging such causes of action and damages:

1.    Assault and Battery or any act or omission in connection with the prevention, suppression or results of such acts;

2.    Harmful or offensive contact between or among two or more persons;

3.    Apprehension of harmful or offensive contact between or among two or more persons; or

4.    Threats by words or deeds.

5.    This exclusion applies to "bodily injury", "property damage", "personal injury" or any obligation to investigate, defend or indemnify, if such injury,

6

damage or obligation is caused directly or indirectly by any other cause or event that contributes concurrently or in any other sequence to the injury or damage. If injury or damage from a covered occurrence, cause or event occurs, and that injury or damage would not have occurred but for the acts or omissions set forth in paragraphs 1 through 4 above, such injury or damage will be considered to be caused by the acts or omissions set forth in paragraphs 1 through 4 above, and would be excluded from coverage.

This exclusion applies regardless of the degree of culpability or intent and without regard to:

A.    Whether the acts are alleged to be by or at the instruction or at the direction of the insured, his officers, employees, agents or servants; or by any other person lawfully or otherwise on, at or near the premises owned or occupied by the insured; or by any other person;

B.    The alleged failure of the insured or his officers, employees, agents or servants in the hiring, supervision, retention or control of any person, whether or not an officer, employee, agent or servant of the insured;

C.    The alleged failure of the insured or his officers, employees, agents or servants to attempt to prevent, bar or halt any

7

such conduct or to medically treat or obtain such treatment for any injuries or damages sustained.

This exclusion applies as well to any claims by any other person, firm or organization, asserting rights derived from or contingent upon any person asserting a claim excluded under Clauses A, B or C (above); specifically excluding from coverage claims for:

1.    Emotional distress or for loss of society, services, consortium and/or income;

2.    Reimbursement for expenses (including but not limited to medical expenses, hospital expenses and wages) paid or incurred by such other person, firm or organization;

3.    Apprehension of harmful or offensive contact between or among two or more persons; or

4.    Threats by words or deeds.

5.    Any obligation to share damages with or, repay someone who must pay damages because of the injury.

II.    It is further agreed between the insured and the Company that:

1.    If this policy contains the Broad Form Comprehensive General Liability Endorsement (GL0404 ED 5-81),

8

paragraph "XI Extended Bodily Injury Coverage", it is deleted from that endorsement and rendered null and void.

2.    If this policy contains the Extended Form General Liability Endorsement (REGL-1 6-94), paragraph "XI Extended Bodily Injury Coverage", it is deleted from that endorsement and rendered null and void.

Id. (P&C 000029).

18.    The Policy includes the following "Employment Related Practices Exclusion":

This policy does not apply for either defense or indemnification to any claim or suit alleging "bodily injury" or "personal injury" or "advertising injury" arising out of the refusal to employ, unlawful discharge or termination of employment, coercion or forceful compulsion, demotion or other reduction in rank or responsibility, reassignment or transfer, discipline or punishment, humiliation, harassment, discrimination on the basis of membership in a protected class or group, evaluation, defamation or any other employment related practices, policies, acts or omissions.

This exclusion applies regardless of whether the "insured" may be held liable as an employer or in any other capacity.

Id. (P&C 000034).

9

19.     The Policy includes the following "Discrimination Exclusion":

> This policy does not apply, for either defense or indemnification, to any liability, defense costs, fines or damages which arise out of any alleged or actual discrimination of any person or persons based upon, but not limited to, color, creed, gender, race, natural origin, age, handicap, illness, religion or sexual preference.

Id. (P&C 000033).

20.     The Policy includes the following "Absolute Punitive or Exemplary Damage Exclusion":

> This policy does not apply to and coverage is not provided for Punitive or Exemplary Damages awarded against any insured, or agreed to in advance by any insured, whether such Punitive or Exemplary Damages are imposed as a result of the acts or omissions of any insured or as a result of vicarious liability of any insured. Coverage for Punitive Damages, whether assessed directly or by way of vicarious liability, is specifically excluded.

> This exclusion does not apply to punitive damages sought or awarded under the Wrongful Death Statute in the State of Alabama.

Id. (P&C 000038).

21.     The Policy includes the following "Amendatory Endorsement":

> It is agreed that the exclusion relating to bodily injury to any employee of the insured is deleted and replaced by the following:

> This insurance does not apply:

10

(I)    to bodily injury to any employee of the insured arising out of and in the course of his employment by the insured for which the insured may be held liable as an employer or in any other capacity....

Id. (P&C 000019).

## III. ARGUMENT

**A.    The Conduct Alleged In The Gibbs Suit Does Not  Qualify As An Occurrence; Thus, No Coverage Is Owed Under The Policy.**

The Policy provides coverage for "bodily injury" or "property damage" caused by an "occurrence."  The Policy defines an "occurrence" as "an accident including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." Id. (P&C 000015 and 000058).  Under Alabama law, intentional acts or conduct do not fall within the definition of an "occurrence."  See Jackson County Hosp. v. Alabama Hosp. Ass'n Trust, 619 So. 2d 1369, 1372 (Ala. 1993).

### 1.    Gibbs's Claims of Sexual Harassment/Discrimination are not Occurrences.

The Gibbs suit alleges theories of quid pro quo and hostile work environment sexual harassment/discrimination.  See Exhibit 1 to MSJ, ¶ 16.   Quid pro quo and hostile work environment claims are deemed to be claims of disparate treatment under Title VII.  It is well-settled law that disparate treatment claims arise only from

11

*intentional* conduct in violation of Title VII. <u>Standifer v. Sonic-Williams Motors,</u>

<u>L.L.C.</u>, 401 F. Supp. 2d 1205, 1216 (N.D. Ala. 2005)("...ultimate burden of

persuading trier of fact that the defendant *intentionally* discriminated against the

plaintiff remains at all times with the plaintiff.")(emphasis added)); <u>Moulds v. Wal-</u>

<u>Mart Stores, Inc.</u>, 935 F.2d 252 (11th Cir. 1991). Further, the Gibbs suit alleges that

all the conduct at issue was committed "intentionally and maliciously."[2] <u>See</u> Exhibit

1 to MSJ, ¶¶ 16, 20, and 25. Because Gibbs's sexual harassment/discrimination

claims can only be based upon intentional conduct, the conduct allegedly supporting

the claims and the claims themselves do not qualify as an "occurrence" under the

Policy. <u>See</u> <u>Jackson County Hosp.</u>, 619 So. 2d at 1372. Thus, Regis is not required

to defend or indemnify P&C or Parker[3] for the sexual harassment/discrimination

claims.

---

[2] In the context of Title VII, "malice" is the equivalent of "intent to harm."
<u>Splunge v. Shoney's, Inc.</u>, 97 F.3d 488, 492 (11th Cir. 1996).

[3] With respect to Parker, there are other factors requiring a determination
that Regis owes no coverage. For example, Parker, when committing the acts of
harassment/discrimination, was not acting in the line and scope of his
employment. As an executive officer of P&C engaging in such acts, he does not
meet the definition of "Persons Insured" or an "insured" under the Policy. <u>See</u>
Exhibit 2 to MSJ (P&C 000015). Thus, no coverage is owed relative to the claims
against him in his individual capacity. Regis specifically preserves and does not
waive arguments based on these and possibly other factors.

**2.    Gibbs's Claim of Religious Discrimination is not an Occurrence.**

The Gibbs suit alleges that P&C and Parker discriminated against her on the basis of her religion.    See Exhibit 1 to MSJ, ¶ 20.  Gibbs specifically describes the alleged discriminatory conduct to be (1) that Parker "continually instructed [her] to 'get right with God'" and (2) that she was discharged "because 'she needed to get right with God.'"  Id., ¶¶ 11 and 13.  The conduct at issue falls within a disparate treatment theory of recovery for religious discrimination under Title VII, not a theory of reasonable accommodation.  See, e.g., Tillery v. ATSI, Inc., 242 F. Supp. 2d 1051, 1060-61 (N.D. Ala. 2003), aff'd, 97 Fed. Appx. 906 (Table)(11th Cir. 2004)(unpublished).  Only intentional conduct can support such a claim.  Id., at 1060.  Thus, the conduct allegedly supporting Gibbs's claim of religious discrimination and the claim itself do not fall within the Policy's definition of "occurrence.  See Jackson County Hosp., 619 So. 2d at 1372.  Regis owes no coverage.

**3.    Gibbs' Claim of Intentional Infliction of Emotional Distress is not an Occurrence.**

The Gibbs suit alleges that the "...conduct of the defendants *as previously set forth* [in the Complaint]..." is the basis for the claim of intentional infliction of emotional distress.  See Exhibit 1 to MSJ, ¶ 25 (emphasis added).  The "previously set forth" conduct is solely limited to alleged intentional acts of

discrimination/harassment. As such, Gibb's claim of intentional infliction of emotional distress does not fall within the definition of "occurrence," and Regis owes no coverage. See Jackson County Hosp., 619 So. 2d at 1372.

**B.     Coverage, If Owed (Which It Is Not), Is Barred By Numerous Policy Exclusions.**

**1.     Coverage is Barred by the Employment Related Practices Exclusion.**

The Policy contains the following Employment Related Practices Exclusion:

> This policy does not apply for either defense or indemnification to any claim or suit alleging "bodily injury" or "personal injury" or "advertising injury" arising out of the refusal to employ, ***unlawful discharge or termination of employment***, coercion or forceful compulsion, demotion or other reduction in rank or responsibility, reassignment or transfer, discipline or punishment, humiliation, ***harassment, discrimination on the basis of membership in a protected class or group***, evaluation, defamation or any other employment related practices, policies, acts or omissions.
>
> This exclusion applies regardless of whether the "insured" may be held liable as an employer or in any other capacity.

See Exhibit 2 to MSJ (P&C 000034)(emphasis added). Under Alabama law, this exclusion bars coverage when the insured's conduct results in injury to an employee within the scope of the employee's employment. State Nat'l Ins. Co. v. Affordable Homes of Troy, LLC, 368 F. Supp. 2d 1281, 1288-89 (M.D. Ala. 2005)(Fuller, J.);

14

see also, Sphere Drake Ins., P.L.C. v. Shoney's Inc., 923 F. Supp. 1481, 1488 (M.D.

Ala. 1996).  Moreover, the exclusion makes no distinction between intentional or

unintentional conduct.

It is undisputed that Gibbs was an employee of P&C when all of the alleged

harassing and/or discriminatory acts occurred.  See Exhibit 1 to MSJ, ¶ 6.  The

conduct at issue is limited to (a) Parker touching Gibbs, (b) Parker making harassing

statements to Gibbs, (c) Parker discussing religion with Gibbs, and (d) Parker

terminating Gibbs.  Id., ¶¶ 9-11 and 13.  The acts about which Gibbs complains relate

to and, in fact are, acts of alleged "discharge or termination of employment" and

"harassment [and] discrimination on the basis of membership in a protected class or

group," as those terms are used in the Employment Related Practices Exclusion.  See

Tillery, 242 F. Supp. 2d at 1060 (sexual harassment/discrimination claims lie when

plaintiff belongs to "protected group").  All conduct at issue is alleged to have

occurred "*at* Defendant, P&C Grocers, Inc. Eunola, Alabama store."  See Exhibit 1

to MSJ, ¶¶ 16, 20, and  25 (emphasis added).   Thus, there can be no doubt that the

conduct occurred in the work environment.  Accordingly, the Employment Related

Practices Exclusion bars coverage.  State Nat'l Ins. Co., 368 F. Supp. 2d at 1288-89

(holding exclusion worded essentially same barred coverage for claims explicitly

enumerated in exclusion and tort claims not named in exclusion, e.g., intentional

infliction of emotional distress); see also Sphere Drake Ins., P.L.C., 923 F. Supp. at 1488 (holding exclusion inapplicable only because not clear that conduct at issue occurred in work environment).  Regis is not required to defend or indemnify P&C or Parker.

### 2.    Coverage is Barred by the Employer's Liability Exclusion Contained in an Amendatory Endorsement to the Policy.

The Policy's Amendatory Endorsement includes the Employer's Liability Exclusion which states, in part:

> It is agreed that the exclusion relating to bodily injury to any employee of the insured is deleted and replaced by the following:
>
> > This insurance does not apply:
> >
> > (I)    to bodily injury to any employee of the insured arising out of and in the course of his employment by the insured for which the insured may be held liable as an employer or in any other capacity....

See Exhibit 2 to MSJ (P&C 000019).  Gibbs was an employee of P&C when the conduct about which she complains occurred.  The injuries alleged in the Gibbs suit fall only into the category of "bodily injury" as defined in the Policy.    In such circumstances, coverage for bodily injury is barred by the Employer's Liability Exclusion.  Carter v. Cincinnati Ins. Co., 435 So. 2d 42, 45 (Ala. 1983)(interpreting

16

similarly worded exclusion; coverage excluded for claims brought by employee against employer-company and company principal); <u>Benniefield v. Valley Barge Lines</u>, 472 F. Supp 314, 317 (S.D. Ala. 1979); <u>Southern Guar. Ins. Co. v. Pittman</u>, 439 So. 2d 7, 8 (Ala. 1983)(interpreting similar coverage provision; holding no coverage owed for bodily injury caused by one employee to fellow employee); <u>Commercial Union Ins. Co. v. Rose's Stores, Inc.</u>, 411 So. 2d 122, 124 (Ala. 1982)(same; no coverage owed to employee-defendant). Thus, Regis owes neither a defense nor an indemnification to P&C or Parker[4] for Gibbs's claims.

### 3.    Coverage is Barred by the Discrimination Exclusion.

The Policy includes a "Discrimination Exclusion":

> This policy does not apply, for either defense or indemnification, to any liability, defense costs, fines or damages which arise out of any alleged or actual discrimination of any person or persons based upon, but not limited to, color, creed, gender, race, natural origin, age, handicap, illness, religion or sexual preference.

<u>See</u> Exhibit 2 to MSJ (P&C 000033). The language of the exclusion is clear and

---

[4] Even if Parker is an "insured" (<u>see</u> n. 3, <u>supra</u>) but contends not to be one of P&C's "executive officers," coverage would still be excluded. The Broad Form Comprehensive General Liability Endorsement amends the definition of "Persons Insured" to also include "[a]ny employee (other than executive officers) of the named insured while acting within the scope of his duties...." but does not extend coverage to "bodily injury...to another employee of the named insured arising out of or in the course of his employment." <u>See</u> Exhibit 2 to MSJ (P&C 00023); <u>see</u> <u>Pittman</u>; <u>Rose's Stores, Inc.</u>

unambiguous and precludes coverage for any liability or defense of claims related to

alleged or actual discrimination. All of the claims against P&C and Parker arise from

or concern alleged violations of Title VII and, thus, fall within the scope of the term

"discrimination" as used in the exclusion. Accordingly, Regis owes no coverage.

See New England Mut. Life Ins. Co. v. Liberty Mut. Ins. Co., 667 N.E.2d 295, 297-

298 (Mass. App. Ct. 1996).[5]

> **4.    Coverage for the Sexual Harassment and Intentional Infliction of Emotional Distress Claims is Barred by the Sexual Molestation And/Or Sexual Harassment Exclusion.**

The Policy includes the following "Sexual Molestation and/or Sexual

Harassment Exclusion":

> NOTWITHSTANDING ANYTHING TO THE CONTRARY CONTAINED IN THIS POLICY, NO COVERAGE IS AFFORDED UNDER THIS POLICY FOR EITHER DEFENSE OR INDEMNIFICATION, FOR ANY CLAIM FOR DAMAGES FOR "BODILY INJURY" OR "PERSONAL INJURY" ARISING OUT OF THE ALLEGED OR ACTUAL SEXUAL MOLESTATION AND/OR SEXUAL HARASSMENT OF ANY PERSON. FOR PURPOSES OF THIS EXCLUSION, THE TERMS "SEXUAL MOLESTATION" AND "SEXUAL HARASSMENT" INCLUDE BUT ARE NOT LIMITED TO PHYSICAL ACTS OF A SEXUAL NATURE, ORAL

---

[5] There appear to be no reported decisions by an Alabama court applying the Discrimination Exclusion. Rather, the courts apparently dispose of issues relevant to this exclusion when applying the Employment Related Practices Exclusion discussed, supra.

OR WRITTEN COMMUNICATION OF A SEXUAL NATURE AND ORAL OR WRITTEN COMMUNICATION OF A DISPARAGING OR INSULTING SEXUAL NATURE.

THIS EXCLUSION ALSO APPLIES TO CLAIMS FOR DAMAGES THAT RELATE TO, OR ARISE OUT OF, OR ARE BASED ON SUCH SEXUAL MOLESTATION AND/OR SEXUAL ABUSE, SUCH AS, BUT NOT LIMITED TO (1) TERMINATION OF EMPLOYMENT OR RELATIONSHIP AS THE RESULT OF THE SEXUAL MOLESTATION AND/OR SEXUAL HARASSMENT OR RESISTANCE THERETO, (2) THE FAILURE TO INVESTIGATE, SUPERVISE, STOP, RESTRAIN, DISCIPLINE, ADMONISH, OR TERMINATE ANYONE ALLEGED TO BE ENGAGED IN SUCH SEXUAL HARASSMENT AND/OR SEXUAL MOLESTATION OR (3) THE FAILURE TO PROMULGATE AND/OR ENFORCE POLICIES AND RULES RELATIVE TO SEXUAL HARASSMENT AND/OR SEXUAL MOLESTATION.

See Exhibit 2 to MSJ, (P&C 000041)(capitalization in original).

The Gibbs suit seeks to hold P&C and Parker liable for (among other things) sexual harassment/discrimination and intentional infliction of emotional distress arising from the alleged acts of sexual harassment/discrimination. See Exhibit 1 to MSJ. The conduct at issue is limited to (a) Parker touching Gibbs in a sexual way, (b) Parker making sexually harassing statements to Gibbs, and (c) Parker terminating Gibbs. See Exhibit 1 to MSJ, ¶¶ 9-11 and 13.

19

Gibbs, being an individual, falls within the scope of those persons to whom the exclusion applies: "ANY PERSON." See Exhibit 2 to MSJ (P&C 000041). The alleged inappropriate touching and harassing remarks fall squarely within the definition of "sexual harassment" provided in the first paragraph of the exclusion:

> "SEXUAL MOLESTATION" AND "SEXUAL HARASSMENT" INCLUDE BUT ARE NOT LIMITED TO PHYSICAL ACTS OF A SEXUAL NATURE, ORAL OR WRITTEN COMMUNICATION OF A SEXUAL NATURE AND ORAL OR WRITTEN COMMUNICATION OF A DISPARAGING OR INSULTING SEXUAL NATURE.

Id. Gibbs's retaliation claim also falls within the scope of the exclusion which applies to claims arising from "TERMINATION OF EMPLOYMENT." Id. Further, Gibbs's intentional infliction of emotional distress claim is a "CLAIM[ ] FOR DAMAGES THAT RELATE[S] TO, OR ARISE[S] OUT OF, OR [IS] BASED ON ... SEXUAL MOLESTATION." as described in the first paragraph of the exclusion. Id. Accordingly, the Sexual Molestation and/or Sexual Harassment Exclusion bars coverage. CNA Int'l Reinsurance Co. v. CPB Enter., Inc., 982 F. Supp. 831, 834 (S.D. Ala. 1997)(interpreting and applying similarly worded exclusion; holding exclusion barred coverage for defense/indemnity of sexual harassment claim and tort claims arising from alleged acts of harassment).

**5.    Coverage for Certain Alleged Acts of Sexual Harassment is Barred by the Assault and Battery Exclusion.**

The Policy excludes coverage for bodily injury, property damage, and personal injury arising from certain acts characterized as assault and battery:

****

Actions and proceedings to recover damages for "bodily injury" or "property damage" or "personal injury" arising, in whole or in part, from the following are excluded from coverage and the Company is under no duty to ... defend or to indemnify an insured in any action or proceeding alleging such causes of action and damages:

1.    Assault and Battery ...

2.    Harmful or offensive contact between or among two or more persons;

3.    Apprehension of harmful or offensive contact between or among two or more persons ....

****

This exclusion applies regardless of the degree of culpability or intent and without regard to:

A.    Whether the acts are alleged to be by or at the instruction or at the direction of the insured, his officers, employees, agents or servants; or by any other person lawfully or otherwise on, at or near the premises owned or occupied by the insured; or by any other person;

****

21

See Exhibit 2 to MSJ (P&C 000029).  Although the Gibbs suit does not allege a claim specifically titled "assault and battery," certain conduct upon which Gibbs bases her claims falls within the defined acts set forth in the exclusion.  For example, the alleged sexual harassment took the form of "rubb[ing] the Plaintiff's shoulders in a sexually suggestive way"  which constitutes an "offensive contact" under the exclusion.  See Exhibit 1 to MSJ, ¶ 9; Exhibit 2 to MSJ (P&C 000029).   Also, the Gibbs suit could be construed to allege that a hostile work environment existed, in part, as a result of the physical contact.  See id.  Any claim arising from such an alleged hostile environment would necessarily be based, wholly or partially, on Gibbs's "[a]pprehension of ... offensive contact" as described in the exclusion.  Because Gibbs's claim for intentional infliction of emotional distress arises from the same conduct, it also falls within the exclusion.  Thus, Regis owes neither a defense nor an indemnification to P&C or Parker for the claims of sexual harassment/discrimination or intentional infliction of emotional distress.

### 6.    Coverage for Punitive Damages Sought in the Gibbs Suit is Barred by the Punitive Damages Exclusion.

The Policy includes the following "Absolute Punitive or Exemplary Damage Exclusion":

> This policy does not apply to and coverage is not provided for Punitive or Exemplary Damages awarded

against any insured, or agreed to in advance by any insured, whether such Punitive or Exemplary Damages are imposed as a result of the acts or omissions of any insured or as a result of vicarious liability of any insured. Coverage for Punitive Damages, whether assessed directly or by way of vicarious liability, is specifically excluded.

This exclusion does not apply to punitive damages sought or awarded under the Wrongful Death Statute in the State of Alabama.

See Exhibit 2 to MSJ (P&C 000038). The Gibbs suit seeks to recover punitive damages against P&C and Parker on all claims alleged in the Complaint. See Exhibit 1 to MSJ, ¶¶ 17, 21, and 25. Under Alabama law, a punitive damages exclusion in a liability policy is valid and enforceable, so long as the exclusion does not preclude coverage for punitive damages in the context of wrongful death. Hill v. Campbell, 804 So. 2d 1107 (Ala. Civ. App. 2001); Ross Neely Sys., Inc. v. Occidental Fire & Cas. Co., 196 F.3d 1347 (11th Cir. 1999).

The exclusion is clear that no coverage is owed for any punitive damages award assessed against P&C by virtue of its alleged vicarious liability for Parker's conduct. Further, assuming for the sake of argument only that Parker, as P&C's president, is an "insured," coverage for a potential punitive damages award against him individually is also barred. See Exhibit 1 to MSJ, ¶ 8. Regis is under no obligation to pay any punitive damages possibly awarded in the Gibbs suit.

23

## IV.  CONCLUSION

WHEREFORE, PREMISES CONSIDERED, Regis respectfully requests that

the Court enter an order granting summary judgment in Regis' favor on all of its

claims.

*s/ Brennan C. Ohme*
Bert S. Nettles (NET-001)
Brennan C. Ohme (OHM-001)
Attorneys for Regis Insurance Company

**Of Counsel:**
HASKELL SLAUGHTER YOUNG & REDIKER, L.L.C.
2001 Park Place North
1400 Park Place Tower
Birmingham, Alabama 35203
(205)  251-1000
(205) 324-1133 (FAX)
bsn@hsy.com
bco@hsy.com

## <u>CERTIFICATE OF SERVICE</u>

I certify that on AUGUST 7TH, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing and/or that a copy of the foregoing has been served by United States Mail, properly addressed and postage pre-paid, to the following:

James Douglas McElvy
AZAR & AZAR, LLC
260 Washington Avenue
Montgomery, AL 36104

Charles W. Blakeney
P.O. Box 100
Geneva, AL 36340

*s/ Brennan C. Ohme*
Brennan C. Ohme
HASKELL SLAUGHTER YOUNG &
REDIKER, L.L.C.
2001 Park Place North
1400 Park Place Tower
Birmingham, Alabama 35203
(205) 251-1000
(205) 324-1133 (FAX)
bsn@hsy.com
bco@hsy.com

460897

25